SEIDL, J.[1]
¶1 Following a jury trial, Tanya Schmit was convicted of operating a motor vehicle while intoxicated (OWI), as a third offense, and resisting or obstructing an officer. In this appeal, Schmit challenges only her OWI conviction.[2] She argues that she received ineffective assistance of counsel when her trial attorney failed to investigate and call two witnesses to testify at trial who could have provided exculpatory testimony regarding whether she operated the vehicle at issue. We agree with Schmit that her attorney performed deficiently and that deficient performance prejudiced her defense. We therefore reverse Schmit's OWI conviction and the order denying Schmit postconviction relief, and we remand the matter to the circuit court for further proceedings consistent with this opinion.
BACKGROUND
¶2 The primary issue at Schmit's trial was whether she drove a vehicle on the night she was arrested for OWI.[3] Cody Card testified that, while driving across a bridge at night, he saw an oncoming white sport utility vehicle (SUV) cross the centerline and strike the bridge's guard wall. When Card stopped to assist, he saw a passenger exit the vehicle. Card testified the passenger was a woman with a "thin build" and "[l]onger, dark-colored hair" who was "probably mid 20s" and wore a sweater and a winter jacket. Card did not see the driver. After the passenger briefly exchanged words with Card, the SUV was driven to a gas station near the bridge. The passenger followed the SUV on foot to the gas station.
¶3 Ronald Hill testified he was paying for fuel inside the gas station when he witnessed a heavily damaged SUV arrive at the gas station. After the SUV stopped, Hill saw a woman wearing "black and blue clothing" who had long, dark hair "approach the front of the vehicle to check the damage of the passenger front side." Hill identified this woman at trial as Schmit. A second woman then appeared near the vehicle. Hill noted that the second woman was wearing a white "heavy winter" jacket, but he otherwise could not recall her appearance. Hill went outside the gas station to speak with the women. Hill believed Schmit had driven the vehicle, but he testified that he did not see anyone exit the vehicle. He also was unsure if Schmit came around the vehicle's front or back end. Several still photos from a gas station surveillance camera were introduced at trial that showed the two women near the vehicle, as well as Hill speaking with them.
¶4 The officer who eventually arrested Schmit testified that he spoke with her and the second woman, Britney Aumer, at the gas station. The officer asked Schmit-who wore a blue coat and black pants-if she was the driver of the SUV. According to the officer: "At first [Schmit] stated, no, she was not [the driver], but then stated, yes, she was; but then a short time later stated, no, she was not driving the vehicle." After her arrest, Schmit told the officer that she "was just giving somebody a ride home." Aumer refused to provide a statement to the officer.
¶5 Neither Aumer nor Schmit testified at trial.[4] Schmit presented no evidence in her defense. The jury found her guilty of the OWI count.
¶6 Schmit brought a postconviction motion in which she argued her trial counsel provided ineffective assistance by failing to call two witnesses to testify at the trial: Holly Korn and Chad Schmit (Schmit's estranged husband). At the Machner[5] hearing, Korn testified that she was at the gas station on the night of the incident. After parking on the southwest side of the station, getting out of her vehicle, and walking to the front of the station, Korn observed the white SUV. Korn at that time worked for a business owned by Schmit and Chad, and Korn recognized the vehicle as belonging to the business. Korn then saw Aumer "get out of the driver's side" of the parked SUV and approach Korn. Korn testified Aumer was frantic and crying. Aumer asked Korn to call Chad. Korn did so, and then gave her phone to Aumer. Korn testified that she "briefly" spoke with Schmit at the scene, as well as with the police officer, and she identified herself in three of the still photos obtained from the gas station camera.
¶7 Korn saw Schmit several months later when Korn resumed working with Chad and Schmit's business on a seasonal basis. However, Korn testified that she first discussed the incident with Schmit about three years after it occurred, which was only two weeks before the trial was held. In that conversation, Korn learned Schmit was being tried for OWI instead of Aumer. In response, Korn-who assumed Aumer had been charged instead-told Schmit that she saw Aumer exiting the driver's side of the vehicle that night, and she offered to testify. When asked why Schmit did not tell Korn about her observation while they worked together, Korn explained the issue "was never really brought up" or "talked about."
¶8 Chad testified at the Machner hearing that, on the night of the incident, he received a call from Korn's phone number. When he answered, Chad realized he was instead speaking to Aumer, who was "crying" and "upset." Aumer-who had also worked for Chad and Schmit's business-told Chad that she and Schmit had been in an accident with his vehicle. Chad asked her who had been driving the vehicle, and Aumer said that she had been driving but that the police ignored her admission. Chad testified that he picked up Schmit from jail the day after her arrest and discussed Schmit's arrest with the local police department. However, Chad testified that he never spoke to Schmit's trial attorney about Aumer's phone call.
¶9 Schmit's trial attorney testified that Schmit told him both Korn and Chad had information on the identity of the driver. Schmit told the attorney about "one to two weeks prior to trial" that Korn was "at the scene" and had "made factual observations that she [Korn] could relay." Schmit's attorney testified that he "assum[ed]" Schmit told him about Korn's observations because they were "helpful," but he could not remember the extent of what Schmit told him. He also testified Schmit told him that Chad communicated, "either by phone or by text, [with] somebody that was at the scene." The attorney testified that he "learned about Chad well before" he learned about Korn, but he later testified that Schmit had told him about Chad's potential testimony at nearly the same time he learned about Korn. The attorney admitted he did not investigate or contact either witness, nor could he recall any reason for not doing so.
¶10 The circuit court denied Schmit's postconviction motion. It first concluded that Schmit's trial attorney did not perform deficiently because a reasonable attorney would not have been able to investigate the information Korn and Chad had to offer in time for trial or to successfully argue for a continuance to do so. The court explained that "a reasonably prudent attorney would not have been able to respond to Schmit's untimely and vague revelation of new witnesses. Schmit presented no evidence that [her attorney] could have investigated these witnesses and have them served with a subpoena in one week." The court further stated that it likely would have denied any motion to allow Korn and Chad to testify.
¶11 The circuit court next determined that even if Schmit's attorney's performance was deficient, there was no prejudice because neither witness's testimony would have altered the outcome of the trial. The court first determined that without a continuance of the trial, it "probably would have excluded [Korn's and Chad's testimony] because their disclosure was untimely" due to "Schmit's inaction" and their testimony would have "prejudiced the State." The court then stated that it probably would have denied a continuance motion. The court also determined that Korn's testimony would have had "limited probative value because she only saw Aumer exit the vehicle after it had been parked for an unknown duration," meaning not immediately after the vehicle was in operation. The court further concluded the jury would not have heard Chad's testimony about Aumer's phone call because that testimony was "inadmissible hearsay." Schmit now appeals.
DISCUSSION
¶12 On appeal, Schmit again argues that she received ineffective assistance of counsel. A defendant alleging he or she received ineffective assistance of counsel must demonstrate: (1) counsel's performance was deficient; and (2) this deficient performance prejudiced the defense. Strickland v. Washington , 466 U.S. 668, 687 (1984). A defendant establishes deficient performance when he or she shows that defense counsel's representation fell below an objective standard of reasonableness. Id. at 688. Courts apply a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690. A defendant establishes prejudice when he or she shows there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. Id.
¶13 Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact. State v. Maday , 2017 WI 28, ¶25, 374 Wis. 2d 164, 892 N.W.2d 611. The circumstances of the case and counsel's conduct and strategy are considered findings of fact left to the circuit court, and we shall not disturb these findings unless they are clearly erroneous. Id. Whether counsel provided ineffective assistance is a question of law that we review independently. Id.
1. Deficient Performance
¶14 Failure to call a potential witness may constitute deficient performance. State v. Jenkins , 2014 WI 59, ¶41, 355 Wis. 2d 180, 848 N.W.2d 786. "A failure to call a key witness, however, does not always necessarily constitute deficient performance" if "[t]he failure to call a witness" was part of "a reasonable trial strategy." Id. , ¶45. A defendant alleging a failure to investigate on the part of his or her counsel must allege with specificity what an investigation would have revealed. State v. Thiel , 2003 WI 111, ¶44, 264 Wis. 2d 571, 665 N.W.2d 305.
¶15 Schmit argues her trial attorney provided deficient representation when he failed to investigate Korn's and Chad's knowledge of the events related to her pending charges and then failed to call them as witnesses at the trial. Schmit's attorney could not recall any strategic reason for not attempting to investigate either witness. In fact, trial counsel testified that "there was no strategy involved at all" in his non-investigation of Korn and that he simply "didn't do it." Nevertheless, the State argues the circuit court properly found Schmit's attorney could not reasonably investigate the witnesses in time for trial. Specifically, the State contends "trial counsel was not aware of what the testimony of the witnesses would entail, nor was he made aware of the witnesses in a timely manner to perform an investigation into what their testimony would entail."
¶16 Nothing in the record on appeal supports the State's contention and the circuit court's finding that Schmit's attorney would not have had sufficient time to locate and question Korn or Chad about their knowledge of the driver of the vehicle, and to subpoena them to testify at trial, if necessary. Rather, and contrary to the circuit court's statement, Schmit did present evidence clearly showing that the efforts could have been completed in time for trial, largely due to Korn's and Chad's existing relationships with Schmit.
¶17 At the Machner hearing, Schmit established that she told her attorney one to two weeks before the trial that Korn was "at the scene" and "made factual observations that she [Korn] could relay." Schmit's attorney testified that he "assum[ed]" Schmit told him about Korn's observations because they were "helpful," but he could not remember the extent of what Schmit told him. Schmit's attorney also testified Schmit told him that Chad communicated, "either by phone or by text, [with] somebody that was at the scene." The attorney testified that he "learned about Chad well before" Korn but later testified that Schmit told him about Chad's potential testimony at nearly the same time he learned about Korn. Korn and Chad were known to Schmit as she worked with them, and, therefore, they could have been readily located. Schmit's attorney did not provide any testimony that "one to two weeks" would not have been enough time to investigate the witnesses. Schmit further established through Korn's and Chad's testimony at the Machner hearing that had her attorney interviewed Korn and Chad, he would have discovered both witnesses possessed exculpatory testimony that implicated Aumer as the driver. We also conclude that, through Korn's and Chad's testimony, Schmit has shown with sufficient specificity what her attorney's investigation would have revealed.
¶18 The State attempts to distinguish this case from Jenkins , in which our supreme court concluded Jenkins' trial attorney was deficient for failing to call a witness, known to counsel, to contradict or impeach a State eyewitness. See Jenkins , 355 Wis. 2d 180, ¶¶40-48. The State argues the Jenkins decision required Schmit to establish that she specified to her attorney the substance of Korn's and Chad's testimony in greater detail. However, Jenkins does not require a defendant to provide counsel with great detail about the substance of a witness's likely testimony before the attorney has a duty to investigate. In Jenkins , the defendant provided his attorney with the substance of the proposed witness testimony, and the attorney still failed to investigate. Id. , ¶42. The Jenkins court concluded Jenkins' attorney performed deficiently because counsel "could give no reason" for not calling the witness at trial despite knowing that the witness possessed evidence that contradicted the State's key witness. Id. , ¶¶42, 46-47.
¶19 Here, Schmit's attorney testified he knew of both Korn and Chad, and he was aware they had possibly exculpatory testimony about Schmit's alleged OWI. As with the attorney in Jenkins , he could not recall any reason for failing to investigate the witnesses and call them to testify at trial. We conclude that this record shows Schmit provided her attorney with sufficient information as to Korn's and Chad's identity and their likely knowledge of the events of the evening to give rise to a duty to investigate on the part of her attorney.
¶20 Furthermore, the record on appeal does not support the State's contention that Schmit's attorney would have been required to move the circuit court for a continuance in order to have sufficient time to interview and subpoena the witnesses. The circuit court stated it would not likely have granted such a motion, noting it had previously denied a continuance motion from the State.
¶21 As discussed above, Schmit was acquainted with and worked with both Korn and Chad, and at the Machner hearing neither witness expressed reluctance to testify on Schmit's behalf. Schmit's attorney recalled that Schmit may or may not have made Korn's contact information available to him, and Korn testified that she lived in St. Croix County. The attorney also testified that he knew of Chad before Schmit disclosed his involvement the night of the incident, and even limited questioning of Schmit would have revealed that Chad was Schmit's ex-husband and business partner. Schmit clearly established that her attorney could have located and contacted Korn or Chad within a week. Given the availability of both witnesses, the record plainly establishes a factual basis to support a conclusion that, without obtaining a trial continuance, a "reasonable attorney" could have, within one week, interviewed Chad and Korn, learned of their potential testimony, informed the court of these exculpatory witnesses, listed them as testifying for the defense at trial, and, if need be, subpoenaed them to do so. Therefore, we agree with Schmit that, had counsel performed with reasonable diligence, both Korn and Chad could have been called to testify at trial, without the need for a continuance from the court.[6] Accordingly, we conclude Schmit's attorney performed deficiently.
2. Prejudice
¶22 Schmit next argues that, had her trial attorney investigated Korn and Chad, both would have provided testimony implicating the driver and exculpating Schmit. Schmit describes the State's evidence as "weak and circumstantial," and she therefore asserts that the absence of both witnesses' testimony undermines confidence in the jury's OWI verdict.
¶23 The circuit court rejected Schmit's prejudice argument, concluding Korn's testimony would have had "limited probative value" and Chad's testimony was "inadmissible hearsay." As a result, Schmit was not prejudiced by her attorney's failure to investigate and call witnesses whose testimony would not have been admitted or made a difference in the outcome of the trial. However, we conclude the court erred in determining Korn's and Chad's testimony would have been excluded or was of limited probative value. See State v. Hammer , 2000 WI 92, ¶21, 236 Wis. 2d 686, 613 N.W.2d 629 (noting evidentiary determinations are a matter of circuit court discretion). The court failed to provide any basis for its conclusions regarding the admissibility and probative value of Chad's and Korn's testimony, and the State develops no argument in support of them. Absent such analysis, we cannot determine that the circuit court properly exercised its discretion in concluding that Chad's and Korn's testimony would not have been probative or admissible at trial. In addition, a search of the record does not support the circuit court's conclusion about the limited probative value of Korn's testimony.
¶24 There is a reasonable probability that, had Chad and Korn testified, the result of the proceeding would have been different. As an initial matter, the record sufficiently establishes that both witnesses could have significantly undermined the State's case if they had testified at trial. The strongest evidence at the State's disposal appears to have been Schmit's inconsistent admissions to the officer, coupled with the fact that Hill first observed Schmit near the vehicle before he saw Aumer. And yet, none of the State's evidence directly placed Schmit in the driver's seat of the SUV. Hill admitted that he saw neither Schmit nor Aumer exit the vehicle. Card's testimony on the appearance of the passenger with long dark hair who exited the SUV arguably matched Schmit's appearance instead of Aumer's. Card also testified that the passenger was "thin," in contrast to Korn's testimony at the Machner hearing that Aumer was "[b]igger boned."
¶25 Had Chad been called as a witness, he could have testified he received a phone call from Korn's phone in which Aumer admitted to being the driver. Had Korn been called to testify, she could have testified that Aumer exited the driver's side of the vehicle after it arrived at the gas station. The State is correct that Korn did not see Aumer in the SUV while it was in operation but, rather, while it was parked at the gas station. However, as Schmit notes, Korn's Machner hearing testimony established that she arrived at the gas station relatively close in time to when the SUV arrived and that she saw Aumer exit the driver's side. We are unpersuaded that this testimony would have been of such limited value that it would not have proved helpful to the defense. If the jury found Korn's testimony credible that she saw Aumer exiting the driver's side, that would have soundly supported a reasonable inference that Schmit did not drive the SUV during the period at issue.
¶26 We next consider whether the circuit court properly exercised its discretion by concluding Schmit was not prejudiced by her attorney's failure to call Chad and Korn as witnesses because they would have been precluded from testifying at trial based upon their untimely disclosure. Under WIS. STAT . § 971.23(2m)(a), the defense shall, within a reasonable time before trial and on demand by the State, disclose all witnesses whom the defendant intends to call at trial upon demand of the district attorney. In addition, § 971.23(7m)(a), provides that "[t]he court shall exclude any witness not listed ... unless good cause is shown for failure to comply." If the defendant can show "good cause" for a failure to disclose a witness pursuant to § 971.23(2m), exclusion of the relevant testimony is not mandatory. See State v. Gribble , 2001 WI App 227, ¶28, 248 Wis. 2d 409, 636 N.W.2d 488. A decision to exclude evidence for a failure to comply with § 971.23 is committed to the circuit court's discretion. See Gribble , 248 Wis. 2d 409, ¶¶28-29. A circuit court properly exercises its discretion when it examines the relevant facts, applies the proper legal standards, and engages in rational decision making. State v. Wilcenski , 2013 WI App 21, ¶9, 346 Wis. 2d 145, 827 N.W.2d 642.
¶27 The circuit court found that the untimeliness was "because of Schmit's inaction" and not because of her trial counsel. However, it then simply stated it "probably would have excluded" the witnesses because the disclosure of Korn and Chad was "untimely" and their testimony as "substantive fact witnesses ... would have prejudiced the State ...." The court did not explain why exclusion of the witnesses would have been proper under these circumstances, how Schmit failed to show good cause for the "untimely" disclosure under the above standards, and how the State would have been unfairly prejudiced by the witness disclosure a week before trial.
¶28 Given the record here, the circuit court's finding of fact that Schmit's disclosure was "untimely"-and therefore her attorney did not prejudice her defense-is clearly erroneous. See WIS. STAT. § 805.17(2). The court's only finding to support the conclusion Schmit's disclosure was untimely is that Schmit did not inform her attorney about Korn's and Chad's potential testimony until years after her arrest. However, this finding ignores when Schmit first learned of the content of Korn's and Chad's potential testimony in relation to when she conveyed that information to her attorney. The record reflects that Schmit informed her attorney of Chad's and Korn's potential testimony immediately upon learning of it. The record further reflects no basis to conclude that Schmit was aware of the substance of Korn's and Chad's testimony until a week prior to trial. The court failed to consider this evidence and determine whether it would provide good cause for the failure to earlier disclose Korn and Chad as witnesses. Because the court failed to consider the evidence of record, the court erroneously exercised its discretion in concluding Schmit's disclosure was untimely.
¶29 The circuit court also failed to explain why the State would have been "prejudiced" had Korn and Chad testified. Indeed, the State has not raised an argument on appeal that allowing the testimony of either witness would have unduly prejudiced its case. In short, the circuit court erroneously exercised its discretion because its postconviction decision lacked findings of fact or a reasoned exercise of discretion regarding the circumstances surrounding the disclosure of the witnesses.
¶30 In reaching our conclusions, we are cognizant that we may assume the circuit court made a finding of fact in a manner that supports its decision if no explicit finding exists. See State v. Pallone , 2000 WI 77, ¶44 n.13, 236 Wis. 2d 162, 613 N.W.2d 568, overruled on other grounds by State v. Dearborn , 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97. And, we may independently search the record to determine if it supports the court's exercise of discretion. See Randall v. Randall , 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737. But here the facts and the bases for the circuit court's discretionary decisions related to the issues are not forthcoming from the record. Given the deficiencies that we have identified in the record, we conclude the circuit court erroneously exercised its discretion in concluding witness exclusion would have been proper and thus concluding trial counsel did not render ineffective assistance.
¶31 In summary, we determine that Schmit's attorney was deficient and that this deficiency prejudiced Schmit's defense. Accordingly, we reverse Schmit's OWI conviction and the order denying postconviction relief, and we remand the matter to the circuit court for further proceedings consistent with this opinion.
By the Court. -Judgment reversed in part; order reversed and cause remanded for further proceedings.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Prior to the trial, Schmit pled guilty to one count of misdemeanor bail jumping. She also does not challenge that resulting conviction.

Schmit does not raise any issue relating to the State's evidence of her intoxication.

It is unclear whether or not Aumer could have been located before the trial was held. Prior to the trial, Schmit filed a motion for a continuance for the express purpose of locating and subpoenaing Aumer. Schmit's trial attorney withdrew this motion at a hearing held the day before the trial.

Referring to State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

Schmit raises an argument that a continuance motion relating to Korn and Chad would have been proper had it been brought by her trial counsel. We view this argument as disputing the circuit court's conclusion that Schmit's trial attorney performed deficiently, not its conclusion regarding whether Schmit was prejudiced. Because we conclude that a reasonable trial attorney would have been able to respond to Schmit's request without a continuance, and thus that Schmit established deficient performance, whether any continuance motion, had it been made, with regard to Korn and Chad would have been denied is not dispositive of this appeal. See Turner v. Taylor , 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (appellate courts need only address dispositive issues).