SHIRLEY S. ABRAHAMSON, C.J.
¶ 1. The defendant, Jimothy A. Jenkins, seeks review of an unpublished decision of the court of appeals affirming a judgment and order of the Circuit Court for Milwaukee County, Carl Ashley and Rebecca F. Dallet, Judges.[1]
¶ 2. A jury found the defendant guilty of one count of first-degree intentional homicide, as a party to a crime, with use of a dangerous weapon, contrary to Wis. Stat. §§ 940.01(1)(a), 939.05, and 939.63 (2007-08);[2] one count of first-degree reckless injury, party to a crime, with the use of a dangerous weapon, *186 contrary to Wis. Stat. §§ 940.23(1)(a), 939.05, and 939.63; and one count of possession of a firearm by a felon, contrary to Wis. Stat. § 941.29(2).
¶ 3. After trial, the defendant brought a postconviction motion seeking a new trial on the grounds that he had ineffective assistance of trial counsel and that a new trial was required in the interest of justice.[3]
¶ 4. After an evidentiary Machner[4] hearing, the circuit court denied the defendant's postconviction motion seeking a new trial, determining that the defendant's trial counsel was not ineffective and that a new trial was not required in the interest of justice. The court of appeals affirmed the circuit court.
¶ 5. The defendant raises two issues on review.
¶ 6. First, did the defendant receive ineffective assistance of trial counsel when defense trial counsel failed to present testimony at trial of potentially exculpatory witnesses, namely an eyewitness other than the State's witness and witnesses with evidence that another person committed the homicide for which the defendant was convicted?
¶ 7. Second, did the court of appeals err in refusing to order a new trial in the interest of justice under *187 the court of appeals' discretionary reversal authority pursuant to Wis. Stat. § 752.35?[5]
¶ 8. We address only the issue of whether the defense trial counsel was ineffective for failing to call the eyewitness Cera Jones to testify at trial. We conclude, under the totality of the circumstances in the instant case, that the defendant has demonstrated both prongs of the test for ineffective assistance of counsel as articulated in Strickland v. Washington, 466 U.S. 668 (1984): trial counsel's deficient performance that did not meet the standard of objective reasonableness, and prejudice against the defendant that resulted from the trial counsel's deficient performance.
¶ 9. Consequently, we reverse the decision of the court of appeals and remand the cause to the circuit court for a new trial.[6]
I
¶ 10. The facts in the instant case are undisputed for the purposes of this appeal.
*188 ¶ 11. On March 23, 2007, the car in which Toy Kimber and Anthony Weaver were traveling ran out of gas near 2100 North 38th Street in Milwaukee. Kimber lived seven blocks away on 45th Street.
¶ 12. After leaving the car, the two men met two young women, one of whom was Cera Jones. Kimber admitted to buying $10 worth of marijuana from Jones. During their conversation, a car drove past them, made a U-turn, and drove towards the four individuals. A man exited the car's rear seat holding a rifle. He shot at Kimber and Weaver, injuring Kimber in the leg and killing Weaver. The shooter then reentered the vehicle and the vehicle drove away.
¶ 13. Immediately after the shooting, police officers talked to both Kimber and Jones. Kimber initially told police that he did not know the shooter. Jones initially told police that she could not see the shooter's face because it was dark and he was wearing a hood.
¶ 14. The next morning, March 24, 2007, Kimber was re-interviewed by the police and shown a photo array, which included the defendant. Kimber identified the defendant as the shooter. Kimber had known the defendant for at least three years and may have seen the defendant earlier in the evening.
¶ 15. Jones was re-interviewed by the police on April 1, 2007. Jones told police that she had not seen the shooter before. She stated that the shooter had a clean-shaven baby face and medium complexion and that he did not have acne scars. Jones was also shown a photo array, which included the defendant. She did not select the defendant from the array. In a statement attached to the defendant's postconviction motion, Jones attests that she also gave a statement that the defendant was definitely not the shooter and that she had seen the defendant across the street minutes after *189 the shooting occurred. The police report does not include these two statements.
¶ 16. The defendant was arrested and charged. While awaiting trial, the defendant shared a jail pod with Corey Moore and Christopher Blunt. According to statements and affidavits in the defendant's motion for a new trial, while in jail, Blunt recognized the defendant and admitted that he [Blunt] had committed the shooting. Moore stated that he overheard this conversation.
¶ 17. The defendant brought the conversation with Blunt to his attorney's attention. Defense trial counsel then informed the prosecutor in writing of Blunt's and Moore's statements. Defense trial counsel did not further interview Blunt or Moore.
¶ 18. At trial, Kimber's testimony that the defendant was the shooter was the only evidence that directly tied the defendant to the shooting.[7] Kimber testified that on the night of the shooting, prior to being shown a photo array, he identified the defendant as the shooter.[8] On being shown the photo array, Kimber identified the defendant. Kimber additionally testified that there was a history of disputes between people *190 living around 45th Street, such as himself, and people living around 38th Street, such as the defendant.
¶ 19. In contrast, the defendant testified that he was in the home of Daniel McFadden at the time of the shooting. McFadden's home is across the street from the scene of the shooting.
¶ 20. McFadden testified that the defendant was asleep and that he woke the defendant when the shots were fired. On cross-examination, McFadden also testified that immediately following the shooting, he told police officers that he had not seen the defendant at the time of the shooting and had last seen him around 2 p.m. that afternoon.
¶ 21. The State and the defendant stipulated that Kimber had five adult convictions and four juvenile adjudications, that the defendant had two prior juvenile adjudications, and that McFadden had one adult conviction and three juvenile adjudications.
¶ 22. The jury convicted the defendant of the crimes charged.
¶ 23. The defendant moved for a new trial in a postconviction motion based upon both (1) ineffective assistance of counsel for failing to investigate, subpoena, and present witnesses who would have supported the proposition that the defendant was not the shooter; and (2) the interest of justice. Attached to the postconviction motion were signed statements by Jones and Moore obtained by the defendant's postconviction counsel's investigator and the investigator's report regarding a conversation with Blunt.
¶ 24. The circuit court granted a Machner evidentiary hearing.
¶ 25. At the Machner hearing, the parties stipulated that Moore and Blunt would have testified similarly to the statements they gave to the investigator. *191 Moore's statement attests that while sharing a jail pod, Blunt made statements to the defendant admitting to the shooting of Kimber and Weaver. The investigator's report about Blunt indicates that Blunt denied making those statements and denied knowing the defendant.
¶ 26. At the Machner hearing, defense trial counsel testified that his notes regarding individual witnesses had been destroyed in a flood. He stated that his trial strategy was twofold — attacking the credibility of the victim eyewitness, Kimber, and providing an alibi for the defendant.
¶ 27. In response to questions about why he did not call Jones as a witness, defense trial counsel testified as follows:
• He was uncertain whether he met with Jones; he could not specifically recall whether he had met or interviewed Jones;
• He could not recall why he did not call Jones as a witness;
• He could not recall why or whether Jones's testimony would have fit with the theory of the case;
• He would have read police reports detailing Jones's testimony;
• He could not recall discussing the photo array with Jones; and
• He could not recall why he did not discuss Jones's photo array with the relevant police officer.
¶ 28. At the hearing, Jones testified that:
• She did not identify the defendant in the photo array;
*192 • She told officers that the shooter had a smooth baby face, which the defendant does not have;
• She told the officers that the defendant was not the shooter;
• She knew the defendant from the neighborhood;
• She spoke with defense trial counsel on multiple occasions but was not contacted afterwards or subpoenaed to be called as a witness; and
• On the evening of the shooting, she told officers that she could see the shooter's face before he put his hood up.
¶ 29. Regarding why he did not call either Moore or Blunt as a witness, defense trial counsel testified as follows:
• He never talked to Blunt;
• He believed that Moore would have been "credible";
• He requested that the prosecutor interview Moore;
• He could not recall whether he or his investigator ever talked to Moore; and
• Moore's counsel told him that Moore would not testify.
¶ 30. The circuit court denied the motion for a new trial both with regard to ineffective assistance of counsel and the interest of justice.
¶ 31. The circuit court reasoned that trial counsel was not ineffective because (1) Jones would "not come across as a credible witness" and in any event "there is *193 not a reasonable probability that the result of the proceeding would have been different,"[9] and (2) the statements of other witnesses whom defense counsel had not called at trial "would not have come in" under hearsay rules.[10]
¶ 32. The circuit court also decided for the same reasons that the interest of justice did not necessitate a new trial.
*194 ¶ 33. The court of appeals affirmed the circuit court order denying the motion for a new trial for ineffective assistance of counsel and denying the motion for a new trial in the interest of justice.
II
¶ 34. Criminal defendants are guaranteed the right to effective counsel by the United States and Wisconsin Constitutions.[11] The benchmark for judging any claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.[12]
¶ 35. Whether a defendant received ineffective assistance of trial counsel is a two-part inquiry under Strickland v. Washington, 466 U.S. 668 (1984).[13] A defendant must show both (1) that counsel performed deficiently; and (2) that the deficient performance prejudiced the defendant.[14]
¶ 36. When reviewing whether counsel performed deficiently, the Strickland standard requires that the defendant show that his counsel's representation fell *195 below an objective standard of reasonableness considering all the circumstances.[15] A court is highly deferential to the reasonableness of counsel's performance. A court must make every effort to reconstruct the circumstances of counsel's challenged conduct, to evaluate the conduct from counsel's perspective at the time, and to eliminate the distorting effects of hindsight.[16] Strategic decisions made after less than complete investigation of law and facts may still be adjudged reasonable.[17] "Just as a reviewing court should not second guess the strategic decisions of counsel with the benefit of hindsight, it should also not construct strategic defense which counsel does not offer."[18]
¶ 37. Even if counsel's performance was deficient, a defendant must also show prejudice by demonstrating that there is a reasonable probability that the errors "had an adverse effect on the defense."[19] The proper test for prejudice in the context of ineffective assistance of counsel is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine *196 confidence in the outcome."[20] The required showing of prejudice is that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[21] A defendant fails to demonstrate prejudice if it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.[22]
¶ 38. Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact.[23] This court will uphold the circuit court's findings of fact, including the circumstances of the case and the counsel's conduct and strategy, unless they are clearly erroneous.[24] Whether counsel's performance satisfies the standard for ineffective assistance of counsel is a question of law which we determine independently of the circuit court and court of appeals, benefiting from their analysis.[25]
¶ 39. We turn to the arguments relating to defense trial counsel's ineffective assistance of counsel.
*197 III
¶ 40. We first address whether defense trial counsel's representation fell below the objective standard of reasonably effective assistance.[26]
¶ 41. Failure to call a potential witness may constitute deficient performance. In Toliver v. Pollard, 688 F.3d 853, 862 (7th Cir. 2012), the court declared that "in a 'swearing match' between two sides, counsel's failure to call two useful, corroborating witnesses, despite [potential bias as a result of] the family relationship, constitutes deficient performance."[27] See also Goodman v. Bertrand, 467 F.3d 1022, 1030 (7th Cir. 2006) (the testimony of witnesses who would corroborate the defendant's account was a "crucial aspect of [the] defense"); State v. White, 2004 WI App 78, ¶¶ 20-21, 271 Wis. 2d 742, 680 N.W.2d 362 (trial counsel's performance was deficient for failure to call witnesses who would have brought in evidence that "went to the core of [the] defense.").
¶ 42. Defense trial counsel's deficient performance is clear from the record. He knew of Jones. He knew she was an eyewitness and could testify about the shooting. He knew her statements would contradict or impeach the eyewitness upon whom the prosecution's entire case relied, Kimber. He knew that Jones had not identified the defendant on the night of the shooting and that she did not identify him when she examined a photo array.
*198 ¶ 43. Jones's testimony fit defense trial counsel's professed trial strategy of discrediting and impeaching the State's witness.
¶ 44. Similarly, Jones's eyewitness testimony would corroborate the defendant's version of events and support defense trial counsel's professed alibi defense. Jones would have testified that she saw the defendant across the street immediately after the shooting.
¶ 45. A failure to call a key witness, however, does not always necessarily constitute deficient performance. The failure to call a witness may have been a reasonable trial strategy.
¶ 46. The record is devoid of any reasonable trial strategy to support defense trial counsel's not calling Jones as a witness at trial.
¶ 47. At the Machner hearing, defense trial counsel could give no reason why he did not call Jones as a trial witness. Indeed, defense trial counsel could not even recall having met with Jones, let alone provide a reason for why he chose not to call her as an witness at trial. We cannot figure out any reasonable trial strategy.
¶ 48. For the reasons set forth, we conclude that defense trial counsel's representation fell below the objective standard of reasonably effective assistance.
IV
¶ 49. As noted above, once deficient performance is established, the defendant must demonstrate that the deficient performance was prejudicial. To demonstrate prejudice, the defendant must show that, absent defense trial counsel's errors, there was a reasonable probability of a different result.
*199 ¶ 50. Our prejudice analysis is necessarily fact-dependent. Whether counsel's deficient performance satisfies the prejudice prong of Strickland depends upon the totality of the circumstances at trial.[28] The circuit court and court of appeals determined that because of inconsistencies in Jones's statements in the initial police report, the second police report, the post-conviction motion papers, and the Machner hearing testimony, the defendant did not demonstrate a reasonable probability that had Jones been called as a witness the result would have been different.[29] We disagree with these courts.
¶ 51. Looking at the totality of the evidence in the trial, we hold that the defendant sufficiently demonstrated a reasonable probability that a different result would have occurred but for the failure to call Jones.
¶ 52. The State's case rested almost completely on the testimony of one eyewitness, the victim Kimber. The defense offered no contradictory eyewitness testimony. No physical evidence directly tied the defendant to the shooting.
¶ 53. In such a case, contradictory eyewitness testimony supporting the defendant would expose vulnerabilities at the center of the State's case. When defense trial counsel knew about Jones and that she could contradict the prosecution's central eyewitness testimony, the excluded contradictory eyewitness would have contributed strongly to doubts regarding the prosecution's case. See United States ex rel. Hampton v. *200 Leibach, 347 F.3d 219 (7th Cir. 2003) (concluding that failure to call key witnesses in a case with no physical evidence was prejudicial).
¶ 54. Jones's testimony also would have supported the defendant's own testimony that the defendant was in a neighboring house at the time of the shooting and came out afterwards.
¶ 55. Although Jones's statements were not necessarily consistent over time, and her credibility could be challenged, Kimber, the prosecution's key eyewitness, had similar if not more substantial credibility problems.
¶ 56. The circuit court noted that Jones's description of the shooter got "better and better as time [went] on," but the same characterization could be applied to the statements of the prosecution witness, Kimber, whose memory of the shooting seemed to improve the day after the shooting. On the night of the shooting, he told police that he could not identify the shooter. The next morning, he affirmatively identified the defendant in a photo array. At trial, he averred that he did actually identify the defendant on the night of the shooting, even though the police report and an officer's testimony contradicted him.
¶ 57. The court of appeals noted that Jones was inconsistent in describing her involvement in a marijuana sale earlier in the evening. Yet Kimber was involved in the same transaction, with similarly inconsistent testimony.
¶ 58. The parties appear not to dispute that Jones's credibility was not subject to attack by a prior criminal conviction. Kimber, the State's key eyewitness, *201 had nine prior convictions or juvenile adjudications; his prior convictions may be used to attack his credibility.[30]
¶ 59. In the particular credibility contest in the present case, in which
• both eyewitnesses had inconsistencies in their statements;
• the prosecution eyewitness had an extensive criminal record and (as far as the record shows) the defense eyewitness had none;
• the entire basis of the prosecution's case rested on its eyewitness identification; and
• no physical or other evidence directly tied the defendant to the crime;
we hold that the failure to call Jones as a witness at trial to give testimony contradictory to that of the State's eyewitness had a reasonable probability of affecting the result of the case.
¶ 60. As Strickland notes, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Strickland, 466 U.S. at 696.
¶ 61. Our conclusion that defense trial counsel's deficient performance in the instant case was prejudicial is supported by Washington v. Smith, 219 F.3d 620, 633-34 (7th Cir. 2000), in which the court granted relief because defense trial counsel's error was prejudicial in "crippl[ing]" the defendant's defense by excluding en *202 tirely the testimony that would have most supported the defendant's theory. The Washington court declared that the additional witnesses themselves had weaknesses and potential inconsistencies, but "the mere fact that some negative evidence would have come in with the positive does not eliminate the prejudicial effect of leaving corroborative evidence unintroduced" and inconsistencies in the prosecution's own witnesses' testimony made it more likely that the additional corroboration of alibi witnesses would change the result of the case.
¶ 62. Wisconsin case law has similarly recognized that when a potential witness "would have added a great deal of substance and credibility" to the defendant's theory and when the witness "could not have been impeached as having a criminal record," the exclusion of the witness's testimony is prejudicial, even if the witness's credibility could be impeached. State v. Cooks, 2006 WI App 262, ¶ 63, 297 Wis. 2d 633, 726 N.W.2d 322.
¶ 63. The court of appeals in Cooks, quoting the federal Washington case, 219 F.3d at 634, noted that "the mere fact that some negative evidence would have come in with the positive does not eliminate the prejudicial effect of leaving corroborative evidence unintroduced." Cooks, 297 Wis. 2d 633, ¶ 63.
¶ 64. In assessing the prejudice caused by the defense trial counsel's performance, i.e., the effect of the defense trial counsel's deficient performance, a circuit *203 court may not substitute its judgment for that of the jury in assessing which testimony would be more or less credible.[31]
¶ 65. State v. Guerard, 2004 WI 85, 273 Wis. 2d 250, 682 N.W.2d 12, demonstrates this principle. In Guerard, the court concluded that defense counsel in that case was deficient in failing to call a witness. The court held that despite the internal inconsistencies and credibility concerns regarding that witness's testimony, defense counsel's deficient performance was prejudicial. The perceived weaknesses in the witness's testimony "would have been a factor for the jury to consider .... The jury would have had to determine the weight and credibility to assign" to the witness's statements.[32]
¶ 66. Taking into account all the circumstances of the case, we conclude that defense trial counsel's performance was prejudicial to the defendant; there is a reasonable probability that the result of the proceeding would have been different had defense trial counsel called Jones to testify at trial.
ijs :]<
¶ 67. We conclude, under the totality of the circumstances in the instant case, that the defendant has demonstrated both prongs of the test for ineffective assistance of counsel as articulated in Strickland, 466 U.S. 668: trial counsel's deficient performance that did not meet the standard of objective reasonableness, and *204 prejudice against the defendant that resulted from the trial counsel's deficient performance.
¶ 68. Consequently, we reverse the decision of the court of appeals and remand the cause to the circuit court for a new trial.

By the Court.

The decision of the court of appeals is reversed and the cause is remanded for a new trial.

 State v. Jenkins, No. 2012AP46-CR, unpublished slip op. (Wis. Ct. App. Jan. 15, 2013).
The Honorable Carl Ashley entered the judgment of conviction and imposed sentence. The Honorable Rebecca F. Dallet entered the order denying Jenkins' postconviction motion.

 All subsequent references to the Wisconsin Statutes are to the 2007-08 version unless otherwise indicated.

 Wisconsin Stat. § 805.15(1) reads as follows:
(1) Motion. A party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice. Motions under this subsection may be heard as prescribed in s. 807.13. Orders granting a new trial on grounds other than in the interest of justice, need not include a finding that granting a new trial is also in the interest of justice.

 State v. Machner, 101 Wis. 2d 79, 303 N.W.2d 633 (1981).

 Wisconsin Stat. § 752.35, governing discretionary reversal by the court of appeals, reads as follows:
Discretionary reversal. In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

 We need not and do not address whether defense trial counsel was ineffective in any other respects, and we do not address whether the court of appeals erred in failing to exercise its discretionary reversal authority to order a new trial in the interest of justice.

 The State and the defendant each called witnesses to testify at trial. For example, the State called various police officers who responded to the crime scene and conducted interviews and photo arrays. The State also called a witness who allegedly told police that he had seen the defendant hold a firearm similar to the one used in the shooting and a witness who allegedly told police that she was in the defendant's alleged alibi location and did not see the defendant. None of these witnesses introduced evidence that directly connected the defendant to the shooting.

 Police officers testified that at the scene of the shooting Kimber said he did not know who shot him.

 The circuit court stated its reasoning at the Machner hearing as follows:
And the reasons that I think that the defense can't meet that burden [of prejudice] is because I think there are just way too many inconsistencies with Miss Jones' statements and I think all of what she testified to is frankly she just did not come across as a credible witness. I'm going to go through those specifics that show that I don't believe that she was credible and I think that the jury would have had difficulty with some of these statements as well.
So I just think that given the contradictions in her testimony, I don't find her credible. I think she would have been impeached on the stand with all these statements and her descriptions kept changing. And I think that based on that, even if she had testified, there is not a reasonable probability that the result of the proceeding would have been different.

 The circuit court stated its reasoning at the Machner hearing as follows:
I just think in terms of a hearsay analysis at that point, that those statements just would not have come in in that way. We'd have an alleged statement overheard by someone who isn't available, essentially not testifying, not being made available by his attorney. . .. And then to try to get in what he supposedly heard someone else say who also is saying he didn't say it, it really is so attenuated. I just don't think that there is that reliability of which hearsay statements are based on so as to allow that to come in in that fashion.

 U.S. Const. Amends. VI and XTV; Wis. Const. art. I, § 7.

 State v. Domke, 2011 WI 95, ¶ 34, 337 Wis. 2d 268, 805 N.W.2d 364 (citing State v. Trawitzki, 2001 WI 77, ¶ 39, 244 Wis. 2d 523, 628 N.W.2d 801 (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984))).

 State v. Carter, 2010 WI 40, ¶ 21, 324 Wis. 2d 640, 782 N.W.2d 695 (quoting Strickland, 466 U.S. at 687).

 Domke, 337 Wis. 2d 268, ¶ 33 (citing Strickland, 466 U.S. at 687).

 Carter, 324 Wis. 2d 640, ¶ 22.

 Id.

 Id., ¶ 23.

 Harris v. Reed, 894 F.2d 871, 878 (7th Cir. 1990) (concluding that trial counsel was deficient for failing to offer a strategic reason for not calling potentially exculpatory witnesses).

 State v. Burton, 2013 WI 61, ¶ 49, 349 Wis. 2d 1, 832 N.W.2d 611 (quoting Strickland, 466 U.S. at 693). See also Wis. Stat. § 805.18 (harmless error rule, made applicable to criminal proceedings by § 972.11(1)).

 Burton, 349 Wis. 2d 1, ¶ 49 (quoting Strickland, 466 U.S. at 693).

 Strickland, 466 U.S. at 687.

 State v. Weed, 2003 WI 85, ¶ 2, 263 Wis. 2d 434, 666 N.W.2d 485 (quoting State v. Harvey, 2002 WI 93, ¶ 44, 254 Wis. 2d 442, 647 N.W.2d 189).

 Domke, 337 Wis. 2d 268, ¶ 33.

 State v. Thiel, 2003 WI 111, ¶ 21, 264 Wis. 2d 571, 665 N.W.2d 305.

 State v. Neumann, 2013 WI 58, ¶ 141 n.87, 348 Wis. 2d 455, 832 N.W.2d 560; Domke, 337 Wis. 2d 268, ¶ 33 (citing Thiel).

 Domke, 337 Wis. 2d 268, ¶ 36.

 Toliver v. Pollard, 688 F.3d 853, 862 (7th Cir. 2012) (quoting Goodman v. Bertrand, 467 F.3d 1022, 1033 (7th Cir. 2006)).

 Thiel, 264 Wis. 2d 571, ¶ 62.

 State v. Jenkins, No. 2012AP46-CR, unpublished slip op. ¶¶ 15-17 (Wis. Ct. App. Jan. 15, 2013).

 See Wis. Stat. § 906.09; State v. Gary M.B., 2004 WI 33, ¶ 21, 270 Wis. 2d 62, 676 N.W.2d 475.

 In contrast, in a Machner hearing, a circuit court may weigh the credibility of the witnesses, including trial counsel, in assessing the deficiency and reasonableness of the trial counsel's performance.

 State v. Guerard, 2004 WI 85, ¶¶ 46, 49, 273 Wis. 2d 250, 682 N.W.2d 12.