PER CURIAM.
¶1 William Hampton appeals a judgment of conviction and an order denying postconviction relief entered by the Crawford County Circuit Court. Following a jury trial, Hampton was convicted of homicide by intoxicated use of a vehicle. Hampton filed a postconviction motion seeking a new trial on the ground that he received ineffective assistance of trial counsel, specifically the attorney's failure to pursue a suppression motion. Because we conclude that Hampton has not demonstrated that he was prejudiced by trial counsel's alleged ineffective assistance, we affirm the judgment of conviction and the order denying postconviction relief.
BACKGROUND
¶2 The following facts are gleaned from the record. We discuss only those facts necessary to place in proper context Hampton's argument that he was prejudiced by trial counsel's purported ineffective assistance.
¶3 Hampton was driving southbound on Highway 18 with his wife, Renee. Hampton drove onto the right-side shoulder, overcorrected back on to Highway 18, and lost control of the vehicle. Hampton's vehicle spun and traveled across both southbound lanes into the northbound lane, where it collided with another vehicle. Both Hampton and Renee were seriously injured. Renee later died from her injuries.
¶4 Hampton was taken by ambulance to a medical facility. An officer went to the facility and placed Hampton under arrest for operating a motor vehicle while intoxicated and causing injury. The officer read to Hampton the information on the "Informing the Accused" form and asked Hampton if he would consent to a blood draw. Hampton refused. The officer contacted the district attorney about a search warrant, and the district attorney advised the officer that under the circumstances Hampton's blood could be taken lawfully without Hampton's explicit consent or a search warrant. A nurse performed the blood draw at the officer's request.
¶5 Hampton was charged with one count of homicide by intoxicated use of a vehicle in violation of WIS. STAT. § 940.09(1)(a) (2017-18)[1] and one count of homicide by intoxicated use of a vehicle with a prohibited alcohol concentration in violation of § 940.09(1)(b). Hampton's counsel did not file a motion to suppress the results of the blood draw.
¶6 Witnesses at trial called by the State included bar patrons and bartenders who observed Hampton that day. As summarized in more detail in the Discussion section below, these witnesses testified that, during the hours before the crash, Hampton consumed numerous mixed drinks and, according to some of the witnesses, appeared to become increasingly intoxicated as the day went on. The State also called a substance analyst from the Wisconsin State Crime Lab who testified that the blood alcohol concentration in Hampton's blood drawn after the crash was 0.253 percent.
¶7 The State also called a traffic accident reconstruction expert who testified that Hampton's inattentive driving caused the crash. Two witnesses to the crash testified at trial that they did not see anything in the road that Hampton had to swerve to avoid, and there were no other vehicles either in front of or behind Hampton's vehicle.
¶8 The jury found Hampton guilty on both the count of homicide by intoxicated use of a vehicle and the count of homicide by intoxicated use of a vehicle with a prohibited alcohol concentration.[2] Hampton filed a motion for postconviction relief contending that his trial counsel was constitutionally ineffective for failing to file a motion to suppress the results of the blood draw. The postconviction motion alleged that, without the evidence of Hampton's blood alcohol concentration, the jury "might have come to a different conclusion about Hampton's guilt as there was evidence that supported Hampton's version of the events."
¶9 The circuit court granted Hampton's request for a Machner[3] hearing. At that hearing, trial counsel testified that he did not consider filing a motion to suppress the results of the blood draw because he did not believe the motion would be successful. Further, trial counsel opined that there was "too much other evidence of [Hampton] drinking that day." The circuit court determined that Hampton had failed to demonstrate either deficient performance or prejudice and entered an order denying postconviction relief. Hampton appeals.
¶10 We refer to other pertinent facts in the following Discussion.
DISCUSSION
¶11 Hampton argues that he is entitled to a new trial because trial counsel rendered ineffective assistance by failing to file a motion to suppress the evidence of Hampton's blood alcohol concentration. We conclude that Hampton's argument fails because he has not established that he was prejudiced by counsel's purported ineffectiveness.
¶12 The United States Constitution guarantees to criminal defendants the right to effective assistance of counsel. State v. Balliette , 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334 ; Strickland v. Washington , 466 U.S. 668, 686 (1984). To establish constitutionally ineffective assistance, a defendant must prove both: (1) that counsel's performance was deficient; and (2) that the deficiency was prejudicial. Balliette , 336 Wis. 2d 358, ¶21 ; Strickland , 466 U.S. at 687. If it is determined that there is an insufficient showing on one of those two prongs, a court need not examine the other. Strickland , 466 U.S. at 697. We decide this appeal on the prejudice prong.
¶13 When a defendant challenges a conviction based on alleged ineffective assistance of counsel, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Balliette , 336 Wis. 2d 358, ¶24 (quoting Strickland , 466 U.S. at 694 ).
¶14 Whether a defendant received constitutionally ineffective assistance is a mixed question of fact and law. State v. Jenkins , 2014 WI 59, ¶38, 355 Wis. 2d 180, 848 N.W.2d 786. This court upholds the circuit court's findings of fact unless those are clearly erroneous. Id. We review de novo whether those facts establish constitutionally deficient performance and whether the deficiency led to prejudice. Id. ; see also State v. Thiel , 2003 WI 111, ¶24, 264 Wis. 2d 571, 665 N.W.2d 305.
¶15 Hampton argues that he was prejudiced because trial counsel failed to file a motion to suppress evidence of his blood alcohol concentration resulting from the warrantless blood draw. This argument has two related components. He argues that, if the blood draw evidence is ignored, the State provided only weak evidence that: (1) he was intoxicated at the time of the crash; and (2) his intoxication was a substantial factor in causing the crash. We reject both of Hampton's arguments and conclude that Hampton has not met his burden to establish prejudice as a result of failure to seek suppression of the blood draw evidence because the State presented strong evidence of Hampton's intoxication and of his impaired driving because of his intoxication.
¶16 Hampton asserts that most of the witnesses testified that Hampton did not appear "very intoxicated." Additionally, Hampton argues that one observable sign of his impairment - bloodshot eyes - was actually the result of his learning of Renee's cancer diagnosis. For the following reasons, we conclude that evidence of Hampton's intoxication a short time before the crash was overwhelming.
¶17 On the day of the crash, several bars in Prairie du Chien participated in a "pub crawl." The trial testimony from the various bartenders shows that Hampton consumed nine to eleven mixed drinks within less than five hours during his participation in that "pub crawl." Bartenders from most of the bars where Hampton was present testified to serving him mixed drinks consisting of brandy and soda. We now recount the pertinent testimony from the bartenders who served Hampton, and other persons who saw Hampton that day, which provided the jury with strong evidence that Hampton became increasingly intoxicated in the hours leading up to the time of the crash.
¶18 From about 1:15 p.m. to 1:45 p.m., Hampton was at a bar and consumed three or four mixed drinks. He then picked up Renee and returned to that bar with her about 15 minutes later. From about 2:00 p.m. to 3:00 p.m., Hampton consumed two more mixed drinks at the same bar. At around 3:45 p.m., Hampton went to another bar, where he consumed one or two more mixed drinks.
¶19 Sometime around 4:00 p.m., Hampton arrived at another bar, where he consumed another mixed drink. The bartender who served Hampton at that bar testified that he "could tell that [Hampton] had consumed some" but, according to the bartender, not to the point where the bartender thought he should not serve him further. After that drink, Hampton went to the next bar where he consumed another mixed drink. The bartender who served Hampton at that time testified that Hampton was "in a jolly mood" and had "[m]aybe slurred speech," but this bartender testified that he believed he could continue to serve him. Around 5:00 p.m., Hampton was at another bar, where he had another mixed drink. The bartender who served Hampton there "could obviously tell that [Hampton] had [ ] been drinking." That bartender testified that Hampton had a "little bit of slurred speech" and was "talking a little bit louder than normal."
¶20 At around 5:45 p.m., Hampton went to yet another bar. A patron of that bar was standing outside and testified that, when Hampton got out of his vehicle, he looked "kind of full" and was not walking "very straight." Renee stayed in the car, and Hampton went inside, where he attempted to order another mixed drink. The bartender gave Hampton a plain soda instead of a mixed drink because "[i]n [the bartender's] eyes, [Hampton] had plenty to drink." The bartender observed that Hampton was slurring his speech and walking clumsily, and observed further that Hampton's face was red and his eyes were bloodshot. Hampton left around 6:00 p.m. Also at around 6:00 p.m., a bartender at a different bar saw Hampton and Renee enter as her shift was ending. That bartender did not serve Hampton and testified that Hampton was "staggering a little bit" and "going sideways a little bit."
¶21 The crash occurred just before 6:30 p.m. After the crash, a responding officer observed beer bottles in Hampton's vehicle and smelled the strong odor of intoxicants in the vehicle. The officer who went to the medical facility to obtain a blood draw smelled the strong odor of intoxicants on Hampton.
¶22 In sum, the testimony summarized above provided the jury with strong evidence that Hampton drank approximately ten alcoholic drinks in the hours before the crash, resulting in an increasing level of intoxication to the point where he slurred his speech and had difficulty walking normally. Based on this evidence, we conclude that, even absent the evidence of Hampton's specific blood alcohol concentration obtained from the blood draw, the record contains overwhelming evidence to support a jury finding that Hampton was significantly intoxicated at the time of the crash.
¶23 Whatever effect the blood alcohol concentration evidence might have had on the jury, it was not "pervasive," nor did it "alter[ ] the entire evidentiary picture." Strickland , 466 U.S. at 695-96. Simply put, the fact of Hampton's intoxication was not a "conclusion only weakly supported by the record." Id. at 696. Rather, Hampton's intoxication was established by "overwhelming record support." Id. Accordingly, there is no reasonable probability that, but for the evidence of Hampton's blood alcohol concentration, the jury would have had a reasonable doubt as to Hampton's guilt.
¶24 Hampton next directs our attention to specifics of the crash and argues there is a reasonable probability that, but for the evidence from the blood draw reflecting a high level of intoxication, there is a reasonable probability that the jury would have had a reasonable doubt that his impairment was a substantial factor in causing the crash. We summarize his testimony immediately below. Hampton argues that the jury would have credited his testimony if not for the blood draw evidence. We reject Hampton's contention.
¶25 While Hampton's trial testimony about the circumstances of the crash was often less than clear, it can be summarized as follows, giving Hampton the benefit of the doubt on ambiguous points. Hampton's vehicle was stopped at a stoplight. When the stoplight for Hampton turned green and Hampton moved forward and up to the speed limit, another vehicle cut him off and hit the front of his vehicle, causing him to veer off onto the right shoulder. When Hampton hit the right shoulder, the vehicle that had cut him off slowed down, and, as Hampton overcorrected and came back onto Highway 18, his vehicle hit the front of the other vehicle. Hampton lost control, spun, and passed into the northbound lane, where he collided with another vehicle.
¶26 Hampton's argument fails for several reasons. First, it ignores the overwhelming evidence of Hampton's intoxication, described above. The jury had ample reason to find that the crash occurred because of his intoxication and not because another car hit his car even without the evidence reflecting Hampton's high level of intoxication.
¶27 Second, Hampton never develops an argument that the blood draw evidence was a basis for the jury not to credit his testimony about why the crash occurred. Hampton simply states in his principal brief in this court: "[T]he jury was told that Hampton had a blood alcohol level of 0.253% blood alcohol - over three times the legal limit for intoxication. As a result, the jury likely discounted Hampton's alternative explanation as to why he went off the road." Similarly, in his reply brief, Hampton makes the following assertion: "Had the jury not heard [the blood alcohol concentration evidence] there is a reasonable possibility that the jury would have given more credence to Hampton's explanation for going off the road and found that Renee's death would have occurred even if Hampton had not had anything to drink ...." But, Hampton does not explain why his testimony would have been more believable absent that evidence, and we see no reason to draw that connection.
¶28 Moreover, this argument would fail even if Hampton had developed it. Other than Hampton's testimony, the evidence that Hampton's inattentive driving caused the crash was strong. The traffic crash reconstruction expert's report stated that the road was dry and weather conditions were clear. The expert came to the conclusion that "inattentiveness rather than a critical turn away from some type of roadway hazard or dramatic mechanical failure" was a factor in this crash. The expert also testified that he saw no physical evidence that Hampton's vehicle had swerved to avoid a crash or had been cut off. As previously noted, two witnesses testified that there were no other vehicles in the vicinity of Hampton's vehicle and that there was nothing in the road that Hampton would have swerved to avoid.[4] In sum, the jury had strong reasons to discount Hampton's testimony and to find that Hampton's inattentiveness, influenced by intoxication, was a substantial factor in causing the crash.
¶29 For these reasons, we conclude that Hampton has failed to establish prejudice, and that conclusion is dispositive in this appeal.
CONCLUSION
¶30 For the foregoing reasons, the judgment and the order of the circuit court are affirmed.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See Wis. Stat. Rule 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The circuit court entered a judgment only on the conviction for homicide by intoxicated use of a vehicle. See Wis. Stat. § 940.09(1m)(b) ("If the person is found guilty of more than one of the crimes so charged for acts arising out of the same incident or occurrence, there shall be a single conviction for purposes of sentencing ....").

State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

Another witness to the crash testified at trial that he "seem[ed] to recall" a vehicle in the southbound lanes near Hampton's vehicle, but he did not see a collision between Hampton's vehicle and that vehicle.