**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 23, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2101-CR**

Cir. Ct. No. **2017CF3598**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MILLARD RENO BANDY, SR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. KREMERS and MARY M. KUHNMUENCH, Judges. *Affirmed*.

Before Brash, P.J., Kloppenburg and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Millard Reno Bandy, Sr., appeals the circuit court judgment convicting him of three counts of knowingly violating a domestic abuse injunction and one count of battery to an injunction petitioner.  He also appeals the court order denying his motion for postconviction relief.  Bandy was found guilty at a jury trial.  He argues that his trial counsel was ineffective by failing to impeach the victim, R.T., with evidence of R.T.'s prior criminal convictions.  We disagree and affirm.[1]

## BACKGROUND

¶2    In May 2017, Bandy was personally served with a domestic abuse injunction that prohibited him from having contact with R.T., from going to her residence, and from committing acts of domestic abuse against her.  R.T. testified that, on the morning of August 2, 2017, Bandy came to her house, hit her in the face, and fled before the police arrived in response to her call.  Bandy then returned to R.T.'s house later that same day and smashed a window.  The following night, on August 3, R.T. came home to find Bandy passed out in her bed.  R.T. called the police, and when they arrived, they woke Bandy up and took him into custody.

¶3    Bandy testified and denied that he was at R.T.'s house, hit R.T., or broke any of her windows on August 2, 2017.  Bandy admitted that he was found passed out on R.T.'s bed the next night, on August 3, but Bandy claimed that he had no independent recollection of being at R.T.'s house that night.

---

[1] The Honorable Jeffrey A. Kremers presided over trial and sentencing and entered the judgment of conviction.  The Honorable Mary M. Kuhnmuench entered the order denying Bandy's postconviction motion.

¶4     During his testimony, Bandy admitted that he had ten prior criminal convictions.  The jury received a standard instruction stating that evidence of the convictions was received solely because it bore upon Bandy's credibility as a witness.  *See* WIS JI—CRIMINAL 327.  Consistent with the instruction, the prosecution argued to the jury that Bandy's ten prior convictions were a factor in evaluating his credibility.

¶5     Although the circuit court had ruled that the defense could similarly challenge R.T.'s credibility with evidence that R.T. had six prior convictions, Bandy's trial counsel did not elicit that evidence.  Bandy moved for postconviction relief, claiming that trial counsel was ineffective in this respect.  The court denied the motion, concluding that trial counsel's failure to impeach R.T. with prior convictions was not prejudicial.  We reference additional facts as needed below.

## DISCUSSION

¶6     To show ineffective assistance of counsel, a defendant must demonstrate both "that counsel performed deficiently" and that "the deficient performance prejudiced the defendant."  **State v. Jenkins**, 2014 WI 59, ¶35, 355 Wis. 2d 180, 848 N.W.2d 786.  Whether trial counsel's performance satisfies the legal standards for ineffective assistance is a question of law we review *de novo*.  *See id.*, ¶38.

¶7     Bandy argues that his trial counsel's failure to impeach R.T. with evidence of her prior criminal convictions satisfies both prongs of the test for ineffective assistance.  We will assume, without deciding, that counsel performed deficiently.  Nonetheless, we agree with the circuit court that Bandy cannot establish prejudice.

¶8    To demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Strickland v. Washington***, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.*** "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." ***Id.*** at 693.

¶9    Bandy argues that, as the only eyewitness, R.T.'s credibility was crucial. He contends that there was little evidence to corroborate her allegations. Bandy argues that impeachment on the basis of prior convictions was essential to the jury's assessment of both his credibility and R.T.'s credibility. Therefore, Bandy argues, trial counsel's failure to impeach R.T. with her prior convictions prejudiced his defense. We disagree.

¶10   First, even without evidence of R.T.'s six prior convictions, R.T.'s credibility was significantly challenged. R.T. admitted that she lied to a 911 dispatcher when she reported that Bandy had a gun on August 2, 2017. In addition, R.T. admitted that she used crack cocaine and was high on the morning of August 2, when she reported that Bandy came to her residence and hit her in the head. Thus, the jury heard that R.T. had lied to authorities about Bandy, had engaged in criminal activity in the form of drug use, and was high on crack cocaine around the time of the first incident.

¶11   Second, significant portions of R.T.'s testimony were corroborated by other evidence. In addition to undisputed testimony by a police officer that the police found Bandy passed out in R.T.'s bed on August 3, 2017, the jury was presented with evidence corroborating R.T.'s description of key events from the

previous day, August 2. The jury viewed photographs taken by police on August 2, 2017 that showed R.T. with a large lump on her head, where R.T. said Bandy had hit her. In addition, one of the officers testified that, when he responded to R.T.'s residence on August 2, R.T. appeared "visibly upset, agitated, upset and fearful." The officer further testified that he observed glass shards from the window that R.T. said Bandy had broken that day.

¶12    Third, Bandy's own testimony added to the already considerable evidence against him. Although Bandy denied being at R.T.'s house on August 2, 2017, he admitted that he and R.T. were together that morning getting high. Further, although Bandy claimed, unequivocally, to recall that he was not at R.T.'s house on August 2, he inconsistently claimed that he could not recall being in R.T.'s house on August 3 due to a period of persistent drug use and sleep deprivation that began on July 27 or 28. This inconsistency in Bandy's ability to recall the events of August 2 and August 3 was, on any objective view of the evidence, suspiciously self-serving. Finally, Bandy provided an unlikely explanation for the broken window, claiming that it had been broken the previous year, in the fall or early winter of 2016, despite uncontroverted evidence that on August 2, 2017, glass shards from the window were present inside the house including on furniture.

¶13    Considering all of the circumstances, we conclude that there is not a reasonable probability that presenting the jury with evidence that R.T. had six prior convictions would have changed the outcome at trial. It is not reasonable to think that such evidence would have swayed the jury to disbelieve R.T. and instead believe Bandy.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.