**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 11, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP604-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF662

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

WILLIAM M. LOCKHART,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Racine County: EMILY S. MUELLER and MAUREEN M. MARTINEZ, Judges. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. William M. Lockhart appeals a judgment of conviction for attempted second-degree intentional homicide by use of a dangerous weapon and possession of a firearm by a felon, as well as an order denying his motion for postconviction relief.[1] In convicting Lockhart of the second-degree offense, the jury found he had used unnecessary force to defend himself—i.e., imperfect self-defense. Lockhart argues he received constitutionally ineffective assistance of counsel as a result of two alleged failures by his trial counsel that prevented him from fully presenting his self-defense argument. He contends that, absent these errors, the State could not disprove perfect self-defense, and there was a reasonable probability that he would have been fully acquitted. We reject Lockhart's arguments and affirm.

## BACKGROUND

¶2 Lockhart was charged with attempted first-degree intentional homicide by use of a dangerous weapon after he shot Dante[2] in the chest at close range. Dante had approached Lockhart as Lockhart was walking his dog past a home Dante was visiting. Dante's friends also approached Lockhart, and Dante's girlfriend drove up alongside Lockhart in a truck. Lockhart pulled out a firearm and fired a single shot at Dante, who survived. Dante was unarmed at the time.

---

[1] The issues raised on appeal concern only the homicide conviction. Therefore, we will not further discuss Lockhart's felon-in-possession conviction.

The Honorable Emily S. Mueller presided over the trial proceedings. The Honorable Maureen M. Martinez presided over the postconviction proceedings.

[2] Consistent with the policy underlying WIS. STAT. RULE 809.86, we use a pseudonym when referring to the victim.

¶3 Lockhart argued at trial that he acted in self-defense. Among other evidence relevant to his self-defense claim, the trial testimony established that, a few months prior to the shooting, Lockhart's cousin, John Williams, had a physical altercation with Dante that ended when Williams fell off a porch. Williams ultimately died from his injuries. The jury partially accepted Lockhart's self-defense argument, convicting him of attempted second-degree intentional homicide upon finding that Lockhart believed that the use of force was necessary. However, in convicting him of the second-degree offense, the jury also necessarily concluded that the defensive use of force was unreasonable, either because Lockhart's belief that the use of force was necessary was objectively incorrect or because his belief regarding the amount of force necessary was unreasonable.

¶4 Lockhart sought postconviction relief based on alleged ineffective assistance of trial counsel. First, Lockhart argued that he had been unable to fully present his self-defense argument because his trial counsel had failed to respond to a hearsay objection the State had interposed during Lockhart's testimony. Lockhart argued trial counsel should have reminded the circuit court of a pretrial ruling on admissibility or explained that the anticipated testimony regarding his fear of Dante would not have elicited hearsay. Second, Lockhart argued that his trial counsel failed to adequately investigate and present witnesses in support of his self-defense claim.

¶5 Following a *Machner* hearing,[3] the circuit court denied Lockhart's postconviction motion. It concluded that, as to the hearsay issue, Lockhart's counsel should have reminded the court of the pretrial admissibility ruling.

---

[3] *See* *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (1979).

However, the court concluded Lockhart did not suffer any prejudice from any of the alleged deficiencies because "his whole story got in"—i.e., the evidence presented was adequate to apprise the jury of Lockhart's belief that Dante killed Williams. Lockhart now appeals.

## DISCUSSION

¶6 The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. We review an ineffective-assistance-of-counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.*

¶7 To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.*; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the defendant fails to establish either prong, we need not address the other. *Savage*, 395 Wis. 2d 1, ¶25.

¶8 To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

4

*I.      Failure to rebut the State's hearsay objection*

¶9      Lockhart testified in his own defense. He was asked on direct examination to describe what he believed happened between Dante and Williams on the date that Williams suffered injuries that would ultimately prove fatal. The question was met by a hearsay objection from the prosecutor, which was sustained by the circuit court. Defense counsel did not offer argument or remind the court that it had made a pretrial ruling on admissibility, which was based in part on the prosecutor's stipulation as to the relevance of evidence regarding Lockhart's perception of who caused Williams's death.

¶10      Lockhart contends his trial counsel performed deficiently in failing to respond in any meaningful fashion to the State's hearsay objection. He argues the statement was not hearsay, *see* WIS. STAT. § 908.01(3), and counsel should have reminded the circuit court of its pretrial determination regarding admissibility. During the postconviction hearing, Lockhart's trial counsel agreed that he "should have stepped in" in response to the State's hearsay objection.

¶11      Even assuming that Lockhart's trial counsel was deficient in this regard, we agree with the circuit court that Lockhart suffered no prejudice as a result of his alleged failings. Lockhart argues that the lack of response from his trial counsel was prejudicial because it resulted in the jury being unable to hear from Lockhart about his beliefs regarding Dante's "violent attack which resulted in the death of Mr. Lockhart's cousin."

¶12      But the jury did hear—from Lockhart—that he believed Dante was ultimately responsible for Williams's death. Lockhart testified that he was called to the hospital after Williams was transported there. Soon thereafter, Lockhart learned that Williams's neck was broken and he had been placed in a medically

induced coma. Lockhart further testified that after Williams awoke, he told Lockhart and his aunt that "[Dante] and his friend[s] jumped on him." Lockhart was specifically asked whether he believed Williams, to which Lockhart replied, "Yes, I did." Lockhart testified Williams's death upset him, he believed Dante and his friends were responsible for it, and he and his family expected Dante to be charged with homicide. He also testified that Dante had confronted him at an automotive shop after Williams's death and asked him if he wanted "to do something about what happened to John."

¶13 Based on Lockhart's testimony, the jury was fully apprised of Lockhart's belief that Dante was responsible for Williams's injuries and, ultimately, his death. The question that prompted the State's hearsay objection— "what did you believe happened on that day with [Williams and Dante], September 3, 2015?"—was answered by Lockhart in his subsequent testimony. Lockhart's briefing is unclear as to what additional testimony his trial counsel was expected to elicit from Lockhart.

II.    *Failure to investigate and call witnesses to support Lockhart's self-defense claim*

¶14 Lockhart also argues his trial attorney should have called several additional witnesses to testify in support of his self-defense claim: Richard Morris, Vysoski Morris, and Dorothy Williams. "Failure to call a potential witness may constitute deficient performance." *State v. Jenkins*, 2014 WI 59, ¶41, 355 Wis. 2d 180, 848 N.W.2d 786. The significance of the unpresented testimony depends upon the nature of the defense and the other evidence presented to the jury. *See id.* (collecting cases).

¶15 We agree with the circuit court that Lockhart has failed to establish prejudice arising from his trial counsel's failure to call the three witnesses. As a prefatory matter, the use of unnecessary defensive force—i.e., imperfect self-defense—is a mitigating circumstance that relegates what would otherwise be first-degree intentional homicide to a second-degree offense. *See* WIS. STAT. § 940.01(2)(b). Defensive force is considered unnecessary if either the defendant's subjective belief that he or she was in imminent danger of death or great bodily harm was unreasonable, or if the defendant's subjective belief that the force used was necessary for defense purposes was unreasonable. *Id.* The State bears the burden of disproving a properly raised self-defense claim beyond a reasonable doubt. *State v. Head*, 2002 WI 99, ¶106, 255 Wis. 2d 194, 648 N.W.2d 413. The jury in Lockhart's case concluded that the State had established beyond a reasonable doubt that one or both objective elements of perfect self-defense was lacking.

¶16 Prejudice, in this context, thus requires Lockhart to demonstrate a reasonable probability that, but for his attorney's failure to call the three witnesses, the jury would have concluded the State failed to meet its burden of disproving perfect self-defense. Put another way, Lockhart must demonstrate a reasonable probability that, with the witness testimony in hand, the jury would have deemed reasonable his beliefs that he was in imminent danger of death or great bodily harm and that the force used was necessary for defensive purposes.

### A. Dorothy Williams

¶17 Turning to the testimony, none of the new witnesses who testified at the postconviction hearing were present for the shooting or for the incident that resulted in Williams's death. Instead, Lockhart's aunt, Dorothy Williams, testified

that she overheard doctors telling family members that Williams had been punched and "stomped[.]" Dorothy conceded she had not heard anything else "about what happened to Mr. Williams or how he was attacked[.]" In fact, presenting Dorothy's testimony would have risked undercutting Lockhart's testimony, as she recalled Williams saying that he could not remember what happened to him. Lockhart cannot demonstrate prejudice arising from trial counsel's failure to call Dorothy as a witness because her testimony was largely duplicative of Lockhart's in terms of the belief that Dante caused Williams's death.

### B. Vysoski Morris

¶18 Vysoski Morris, Williams's son, testified at the **Machner** hearing that he heard that Dante "punched [Williams] and then they threw him off the porch." Vysoski also testified that he was with Lockhart at a gas station once when Dante pulled up and looked at Lockhart with what Vysoski described as an "evil eye." Vysoski perceived this as a threat to Lockhart. Vysoski recounted another time that Dante appeared to taunt Lockhart outside Vysoski's house, and Lockhart walked away.[4]

¶19 Vysoski's testimony undoubtedly would have helped establish context for Lockhart's claim that he was afraid of Dante. However, the jury did not need additional testimony on that point; it concluded as much when it found Lockhart guilty of the second-degree offense. Based on the trial evidence, the jury was aware that Lockhart believed Dante and his friends had attacked Williams and

---

[4] Lockhart does not address this testimony in his briefing.

were responsible for his death. And Lockhart had testified that he was not involved in the gas station confrontation; he was merely present, and the verbal altercation was between Dante and Vysoski.

¶20 Vysoski's testimony would have had very little impact on the jury's assessment of the reasonableness of Lockhart's beliefs that he was in peril and that the use of defensive force was necessary. Vysoski did not testify to any explicit threats, nor did he testify that Dante had a gun or would frequently go armed. Vysoski denied that he was aware of any physical contact ever occurring between Dante and Lockhart. Vysoski characterized Dante's conduct in twice confronting Lockhart as disrespectful, not physically violent. Vysoski's testimony would not have created a reasonable probability that the jury would have differently assessed the soundness of Lockhart's beliefs that he was in imminent danger or that defensive force was necessary.

### C. Richard Morris

¶21 Another of Williams's family members, Richard Morris, testified that after Dante was charged in relation to the incident with Williams, he heard Dante make threats to Lockhart following a court appearance. Richard testified Dante rode around the courthouse a few times in his truck, and he described Dante's statements as "toying [with Lockhart] -- he was telling him about, Hey, I'm going to get you. I'm going to do this and I'm going to do this."

¶22 Presenting Richard's testimony would have been perilous. Richard's testimony about the courthouse incident appeared to contradict Lockhart's. Lockhart testified that when he saw Dante go around the courthouse, Dante "was looking at us" and did not make any statements to him. Lockhart was in fact quite dismissive of the incident: "I really ain't think too much of it, but I just know that

9

he was looking at us, and then he went around the block and came back around the block again."

¶23 For Richard's testimony to have "corroborated the reasonableness of Mr. Lockhart's belief" that defensive force was necessary, the jury would have had to place greater weight on Richard's testimony than that of the defendant.[5] While the jury could conceivably have done this by adopting a strained reconciliation of the testimony—e.g., perhaps Richard heard Dante yelling something Lockhart did not—more likely the jury would have concluded that Lockhart was either misremembering or lying about the courthouse incident— thereby casting doubt upon the remainder of Lockhart's testimony as well. Under these circumstances, we cannot agree that the absence of Richard's testimony was prejudicial.

¶24 In sum, the testimony does not substantiate Lockhart's claim that the new testimony would have "refuted the State's evidence, presented through [Dante and his girlfriend], that Mr. Lockhart was the aggressor" toward Dante. Lockhart plausibly suggests that the additional testimony might have given the jury a "different lens through which to view" the encounter. But given the context and content of the evidence at issue, this "different lens" does not lend itself to a reasonable probability that the jury would have accepted that Lockhart was privileged to use potentially lethal force.

---

[5] Lockhart's argument assumes, of course, that the jury would have accepted Richard's testimony as credible. If presented with the contradictions between Lockhart's testimony and Richard's, it is equally plausible that the jury would have concluded Richard was embellishing the incident, in which case no prejudice would lie from the absence of Richard's testimony.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.