**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**September 10, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2017AP1791-CR**
**2017AP1792-CR**
**2017AP1793-CR**

Cir. Ct. Nos. 2011CF673
2012CF518
2012CF587

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RANDALL A. HUNGERFORD,

DEFENDANT-APPELLANT.

APPEALS from judgments of the circuit court for Outagamie County: JOHN A. DES JARDINS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In these consolidated appeals, Randall Hungerford claims his attorney's deficient performance prevented him from moving to withdraw his pleas prior to sentencing. He seeks to return this case to a presentence status so that he may file a motion for plea withdrawal under the "fair and just reason" standard. In the alternative, he argues plea withdrawal is necessary to correct a manifest injustice. We conclude Hungerford's postplea expressions of confusion regarding the charges to which he had pled do not, under the circumstances here, support either a claim for ineffective assistance of counsel or a claim for postsentence plea withdrawal under a manifest injustice standard. Accordingly, we affirm.

## BACKGROUND

¶2 These appeals involve three consolidated cases. In Outagamie County Circuit Court case No. 2011CF673, Hungerford was charged with five counts, all as a repeater: (1) forgery; (2) identity theft; (3) uttering a forgery; (4) felony bail jumping; and (5) credit fraud. In Outagamie County Circuit Court case No. 2012CF518, Hungerford was charged with two counts of felony bail jumping and one count of misdemeanor theft. In Outagamie County Circuit Court case No. 2012CF587, the State charged Hungerford with concealing stolen property as party to a crime and three counts of felony bail jumping.

¶3 Hungerford reached a global plea deal resolving those cases and a fourth criminal case, Outagamie County Circuit Court case No. 2009CF995. Pursuant to the agreement, Hungerford would plead to one of the charges in case No. 2011CF673 other than the bail jumping charge, without the repeater enhancer. He also would plead to two counts of felony bail jumping, one each from case Nos. 2012CF518 and 2012CF587, as well as to a receiving stolen property charge

2

in case No. 2012CF587.[1]  The State agreed to dismiss the forgery charge in case No. 2011CF673 and one of the bail jumping charges in case No. 2012CF587 with prejudice.  The remaining charges, including all those in case No. 2009CF995, were to be dismissed and read in.

¶4      The four cases were consolidated and transferred to Branch VII of the Outagamie County Circuit Court.  Shortly thereafter, the circuit court conducted a plea hearing.  At the hearing, Hungerford's defense counsel, attorney Michael Petersen, represented to the court that he had completed a plea questionnaire and waiver of rights form with Hungerford and that the questionnaire had attached the offer letter from the State that set forth the parties' agreement.[2]  Hungerford, through Petersen, waived reading of each of the charges and pled no contest to one count of credit fraud, two counts of bail jumping, and one count of receiving stolen property.  Before Hungerford did so, the court discussed the maximum penalties for each of the offenses.

¶5      The circuit court then conducted a sworn plea colloquy with Hungerford.  Hungerford stated he had answered and signed the plea colloquy

---

[1] Under WIS. STAT. § 943.34(1) (2017-18), a person can be guilty of receiving stolen property either by receiving or concealing stolen property.  Although the offense was charged as concealing stolen property, the parties referred to it up until the date of the plea hearing as a charge for receiving stolen property.  The matter was corrected at the plea hearing when defense counsel pointed out that the initial charge was for concealing stolen property.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The State's offer letter is not attached to the plea questionnaire in the appellate record.  During postconviction proceedings, Petersen testified the letter was entered "on top" of the plea questionnaire, not as an attachment.  The jury instructions containing the elements for each of the crimes to which Hungerford pled are attached to the plea questionnaire.

form and understood everything on the form. The court discussed with Hungerford the constitutional rights he was giving up by entering pleas, including his rights to a unanimous jury, to confront witnesses against him, and to present his own evidence. The court then recited the elements of each of the offenses to which Hungerford was pleading. Hungerford stated he understood each of those elements, as well as the charges themselves. The court then found Hungerford had entered his pleas freely, voluntarily and intelligently with a full understanding of his constitutional rights and the elements of the offenses.

¶6      Pursuant to the plea agreement, both parties requested a presentence investigation report (PSI) and were free to argue at sentencing. The sentencing hearing was scheduled for February 15, 2013. On February 4, 2013, the agent assigned to complete the PSI notified the circuit court that during his conversation with Hungerford on January 25, 2013, Hungerford appeared to be confused regarding his convictions. According to the letter, Hungerford was to speak with attorney Petersen, who would then file a memorandum advising the court of the situation and request additional time to complete the PSI. The agent noted no memorandum had been filed as of the date of his letter, and the court set a new date for the sentencing hearing.

¶7      At the inception of the sentencing hearing, Petersen requested an adjournment for several reasons. First, he stated Hungerford "seems to have some confusion regarding what the nature of the plea agreement was as well as what the charges were that he was pleading to." Petersen stated the confusion issue had been brought to his attention that morning. Petersen additionally noted that Hungerford had a reconfinement hearing scheduled soon at the Dodge Correctional Institution, and he would need additional time to discuss that

4

proceeding with Hungerford. Petersen also had not had an opportunity to review the PSI with Hungerford before the morning of the hearing due to Petersen's schedule as well as Hungerford's custody in Dodge County, which Petersen stated made visitation extremely difficult. The court adjourned the sentencing hearing for approximately three weeks.

¶8 The adjourned sentencing hearing was held on March 21, 2013. No mention was made of Hungerford's previously documented confusion regarding the charges or his pleas. The State recommended consecutive sentences totaling eleven and one-half years' initial confinement and ten and one-half years' extended supervision. Petersen stated Hungerford had wanted to take some of the charges to trial, but "because of the procedures and the fact of the additional bail jumpings that kept piling up on my client," Hungerford felt the best course was to "ultimately enter pleas to many cases and resolve all the files." The defense recommended a probationary sentence. Emphasizing the deceptive nature of Hungerford's crimes and the need to protect the public, the circuit court sentenced Hungerford to consecutive sentences totaling eight years' initial confinement and six years' extended supervision.

¶9 Hungerford, represented by new counsel, filed a motion to vacate his sentence. Hungerford's new attorney subsequently withdrew, and Hungerford filed a pro se motion seeking an order requiring Dodge Correctional Institution to release recordings of Hungerford's phone conversations with Petersen while he was in custody. The circuit court signed the order and, with the help of another attorney, Hungerford filed an amended postconviction motion seeking plea withdrawal in addition to resentencing. As relevant here, he argued that his pleas were not knowing, intelligent and voluntary; that they were the result of Petersen's

5

misstatements regarding the charges to which Hungerford would plead guilty; and that they resulted in a manifest injustice.

¶10     The circuit court held a *Machner* hearing at which attorney Petersen testified.[3]  Petersen explained that Hungerford's case was a "complex matter that had several working parts to it," and as new charges were filed against Hungerford, Petersen discussed with him the possibility of a plea deal.  According to Petersen, the negotiations with the State in this case were "more extensive" than in other cases because of the large number of charges and because one of the cases almost proceeded to trial.  During the negotiations, Petersen was continually in contact with Hungerford regarding the State's various offers and his counterproposals.  After engaging with the State in negotiations, he and Hungerford discussed the State's final offer "a handful of times," and they completed the plea questionnaire and waiver of rights form on the morning of the plea hearing.  Petersen testified he had no doubts as to Hungerford's understanding of the plea agreement on the morning of the plea hearing.

¶11     According to Petersen, he and Hungerford had two phone conversations prior to sentencing in March 2013.  Transcripts of the phone calls are included in the appellate record.  In the first phone call, which occurred on March 12th, Petersen told Hungerford his call was unexpected and that he did not have Hungerford's file in front of him.  They referred to a letter that Hungerford had sent the week prior, apparently concerning the plea agreement.[4]  During that

---

[3] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[4] Petersen testified that the letter discussed two issues, one of them being the "nature of the plea agreement."  Petersen could not recall anything more specific about the letter's contents on that issue, however.

call, Petersen told Hungerford he had requested a transcript of the plea hearing in an effort to "clear up any issue regarding what the nature of the plea agreement was regarding those other charges … and the fact that those are all to be dismissed with the exception of a bail jumping." After some additional conversation, Hungerford said, "Okay. So you're saying that the receiving stolen, and the bail jumping, and the [credit fraud] one is going to be dismissed and all I'm going to get is a bail jumping." Petersen responded, "Correct, yes …. Just the bail jumping from the retail theft." They then discussed the possible sentence on that charge, as well as their sentencing strategy, before Hungerford again asked, "And then all we're going to do is worry about the bail jumping, right?" Petersen again responded, "Correct." Hungerford asked the same question, and Petersen gave the same response, during the second phone conversation, which happened on March 18, 2013.

¶12 At the *Machner* hearing, Petersen was asked to explain his statements during the two phone calls. Petersen testified that he had made a mistake during the first phone call because he did not have Hungerford's file with him at the time, and that the second call was primarily about other issues. Petersen stated he "got the notion" about the single bail jumping charge from Hungerford's letter, and he then requested a transcript of the plea hearing to clarify the issue.

¶13 Regardless, Petersen stated he did not believe at the time of the phone conferences that Hungerford genuinely misunderstood the charges to which he had pled. Petersen testified Hungerford had "misled" him on several occasions during the representation, including by denying involvement in crimes that he could clearly be seen on video committing. Petersen stated that, from that point

forward, Hungerford's "credibility with me was damaged as to what exactly was true or not."

¶14    Petersen was also asked about his statement at the adjourned sentencing hearing that he had learned of Hungerford's claimed confusion on the morning of the hearing. Petersen testified that he believed, based on the PSI author's letter, that any such confusion was "potentially a stall tactic on the part of Mr. Hungerford and an effort to not accept responsibility for his offenses." It was not until Petersen spoke with Hungerford in person to review the PSI that Hungerford "expressed significant confusion" regarding the offenses to which he had pled. Petersen testified that he was "not going to make an excuse" for his mistaken statements in the phone calls regarding the charges for which Hungerford was to be sentenced.

¶15    Petersen also testified that prior to the sentencing hearing on March 21, 2013, he met with Hungerford in person and they discussed Hungerford's apparent confusion regarding the pleas. Petersen explained to Hungerford that the offenses for which he was to be sentenced were the ones to which he had entered pleas. Petersen testified "[e]ither Mr. Hungerford legitimately didn't understand the plea, or, second, … he was essentially trying to change the course of what his case was about. So at that point it was decided to proceed to sentencing." Petersen never considered filing a presentence motion to withdraw Hungerford's pleas because he took "every statement of Randy's with a grain of salt."

¶16    At a subsequent decision hearing on Hungerford's postconviction motion, Hungerford expressed his desire to fire his postconviction counsel. Hungerford directly addressed the circuit court regarding issues surrounding his

representation and the legal challenges to his convictions, but he did not testify and did not directly argue plea withdrawal was required on the basis that he did not understand the nature of the charges at the time he pled no contest.[5] Hungerford's postconviction counsel, who was permitted to make arguments, conceded there was no direct evidence that Hungerford misunderstood the nature of the plea agreement at the time of the plea hearing. He instead argued that Hungerford's postplea expressions of confusion and Petersen's misstatements to Hungerford during their phone calls both indicated that Hungerford did not understand his pleas at the time they were entered, constituting a manifest injustice. Counsel also asserted Petersen performed ineffectively by not seeking plea withdrawal prior to sentencing, at which point a more permissive legal standard would have applied to the motion.

¶17     The circuit court, addressing Hungerford directly, concluded "you knew precisely what you were doing when you entered your pleas here." The court remarked that the transcript of the plea hearing was "the best evidence as to what you understood at the time." The court did not find the phone calls compelling because Hungerford had made "cold call[s]" and had been told that Petersen did not have Hungerford's file in front of him. The court determined the plea agreement had been "carefully explained" in open court and, therefore, there was no deficient performance or prejudice arising from Petersen's representation. The court also denied Hungerford's motion to have his postconviction attorney

---

[5] Instead, Hungerford raised a litany of issues regarding alleged ineffectiveness on the part of his various attorneys and regarding the PSI, which he claimed never to have seen.

9

removed, finding it was a "continuing tactic that has been used by you in this courtroom to frustrate the administration of justice."[6]  Hungerford now appeals.

## DISCUSSION

### I.  Ineffective Assistance of Counsel

¶18    Hungerford first argues Petersen was constitutionally ineffective when he failed to seek or discuss with Hungerford plea withdrawal prior to sentencing.  Hungerford charges that he had a "viable claim" to withdraw his pleas based upon his expressions of confusion after the plea hearing.  He also asserts Petersen was "deficient when he made a unilateral decision to proceed with sentencing without moving to withdraw Hungerford's pleas or at least informing Hungerford of his plea withdrawal options."

¶19    Under *Strickland v. Washington*, 466 U.S. 668 (1984), to prevail on an ineffective assistance of counsel claim, a defendant must show both that counsel performed deficiently and that the deficient performance caused prejudice. *Id.* at 687.  Our review of counsel's performance is highly deferential.  *State v. Jenkins*, 2014 WI 59, ¶36, 355 Wis. 2d 180, 848 N.W.2d 786.  The defendant must show that the attorney's representation fell below an objective standard of

---

[6] The circuit court later granted a motion for resentencing based upon inaccurate information regarding the nature of other sentences Hungerford was or would be serving at the time of the original sentencing hearing.  Those issues are not before this court.

Hungerford also brought another postconviction motion alleging the same bases for plea withdrawal but asserting that Petersen "could not have been telling the truth" at the *Machner* hearing based upon Outagamie County jail visitation logs.  The court denied the motion, concluding "Hungerford's new evidence does not address Hungerford's failure to state his confusion when asked to enter pleas to more than one count of bail jumping."

reasonableness under all the circumstances. *Id.* "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. We will attempt to reconstruct the circumstances under which defense counsel made his or her decisions when evaluating the reasonableness of his or her conduct. *Jenkins*, 355 Wis. 2d 180, ¶36.

¶20 A defendant proves prejudice by demonstrating there is a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶37. A "reasonable probability" is a probability sufficient to undermine our confidence in the outcome. *Id.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. To obtain plea withdrawal based on ineffective assistance of counsel, the defendant must show that there is a reasonable probability that the defendant would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). After sentencing, the defendant bears the burden of proving both prongs by clear and convincing evidence, *State v. Dillard*, 2014 WI 123, ¶¶83-84, 358 Wis. 2d 543, 859 N.W.2d 44, and the claim will be denied if he or she fails to prove either prong, *State v. Morales-Pedrosa*, 2016 WI App 38, ¶15, 369 Wis. 2d 75, 879 N.W.2d 772.

¶21 Whether a circuit court properly granted or denied relief on an ineffective assistance of counsel claim presents a mixed question of fact and law. *Jenkins*, 355 Wis. 2d 180, ¶38. We review a circuit court's findings of historical fact—including its findings of the circumstances of the case and defense counsel's conduct—using the "clearly erroneous" standard. *Id.* However, whether

counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo. *Id.*

¶22   Hungerford's ineffective assistance of counsel claim vis-à-vis plea withdrawal does not allege Petersen's representation was deficient at any point prior to or at the plea hearing. Rather, Hungerford's arguments rest upon the different standards applicable to a motion for plea withdrawal made before sentencing as opposed to motions made after sentencing. Before sentencing, a defendant is freely allowed to withdraw his or her plea for any fair and just reason, unless the prosecution would be substantially prejudiced. *State v. Lopez*, 2014 WI 11, ¶61, 353 Wis. 2d 1, 843 N.W.2d 390. The burden initially rests with the defendant to demonstrate by a preponderance of the evidence a "fair and just reason" warranting plea withdrawal, and upon such a showing the burden shifts to the State to prove substantial prejudice. *Id.* When a motion for plea withdrawal is brought after sentencing, the defendant carries the heavy burden of establishing, by clear and convincing evidence, that plea withdrawal is necessary to correct a manifest injustice. *State v. Daley*, 2006 WI App 81, ¶14, 292 Wis. 2d 517, 716 N.W.2d 146. "[T]he 'fair and just reason' standard for plea withdrawal is a more lenient standard than 'manifest injustice.'" *Id.*, ¶19.

¶23   The remedy for a defendant who is deprived of the effective assistance of counsel should be tailored to the injury suffered as a result of the constitutional violation. *Lafler v. Cooper*, 566 U.S. 156, 170 (2012). Consequently, Hungerford clarifies that he is not seeking plea withdrawal as a remedy—at least, not directly. Instead, he asserts "the proper remedy is to restore the case to a post-plea, pre-sentencing posture, so Hungerford can bring a pre-sentence motion for plea withdrawal."

¶24     To demonstrate prejudice arising from Petersen's failure to raise the issue of presentence plea withdrawal, Hungerford must demonstrate that he could have presented a fair and just reason that would have permitted the circuit court to grant such a motion.  The "fair and just reason" standard lacks scientific exactness.  *State v. Jenkins*, 2007 WI 96, ¶31, 303 Wis. 2d 157, 736 N.W.2d 24.  Accordingly, whether a defendant's reason adequately explains his or her change of heart is a matter left to the circuit court's discretion.  *Id.*  "The reason must be something other than the desire to have a trial, or belated misgivings about the plea."  *Id.*, ¶32 (citations omitted).  Conversely, a defendant's "genuine misunderstanding of the consequences of a plea is a fair and just reason to withdraw his [or her] plea," but "whether such a misunderstanding actually exists is a question of fact, and the circuit court's determination depends heavily on whether the court finds the defendant's testimony or other evidence credible and persuasive."  *Id.*, ¶34.

¶25     Notably, Hungerford has never testified that his pleas, at the time they were entered, failed to comply with the constitutional dictates that they be made knowingly, intelligently and voluntarily.  In his reply brief, in fact, Hungerford states he "does not dispute he knowingly entered pleas to four charges at the plea hearing."  And while it is true that a fair and just reason to withdraw a plea before sentencing does not depend upon either a deficient plea colloquy or a constitutionally invalid plea, the circuit court nonetheless must make a determination of whether the proffered fair and just reason outweighs the efficient administration of justice.  *Id.*, ¶63.

¶26     Ultimately, Hungerford's only proffered "fair and just reason" for plea withdrawal is that he expressed confusion about his pleas after the plea

13

hearing.  Setting aside the credibility issue for a moment, if his pleas were made knowingly, intelligently and voluntarily—as Hungerford concedes they were— such postplea expressions of uncertainty merely amount to a change of heart, which cannot form the basis for presentence plea withdrawal.  *See **Jenkins***, 303 Wis. 2d 157, ¶31.  Hungerford presents no basis upon which a circuit court could reasonably conclude that his newfound desire for a trial on some of the charges warranted plea withdrawal.  He thus fails to show he was prejudiced by his trial counsel's claimed deficient performance.

¶27    The additional problem Hungerford faces is the considerable testimony by Petersen, subsequently accepted by the circuit court, that Hungerford was engaging in tactics designed to "frustrate the administration of justice."  The court implicitly found that Hungerford's expressions of confusion to the PSI author and to Petersen were intended to manufacture an issue that would delay the resolution of his cases.  Again, Hungerford did not testify at the ***Machner*** hearing regarding his understanding of the charges or how that understanding was formed, and his letter to Petersen mentioned during their telephone conversations was not made part of the appellate record.  Given that Hungerford expressed uncertainty regarding the nature of his convictions to the PSI author in early February 2013, his "confusion" regarding his pleas must have occurred at some point prior to that time, and prior to the phone conversations with Petersen in March.  Yet, Hungerford has presented nothing to explain how he came to believe, contrary to his statements at the plea hearing, that he would only be sentenced for a single bail jumping charge.  Given the court's findings of fact, we cannot conclude on this record that the circuit court would have found credible or persuasive Hungerford's claimed confusion.  *See **Jenkins***, 303 Wis. 2d 157, ¶34.  As a result, Hungerford fails to show he was prejudiced by his counsel's failure to move for plea

14

withdrawal prior to sentencing. Further, an attorney is not deficient for declining to file a motion that would have failed. *State v. Wheat*, 2002 WI App 153, ¶23, 256 Wis. 2d 270, 647 N.W.2d 441.

¶28    Given the foregoing, we conclude Hungerford has not demonstrated that Petersen was constitutionally ineffective or that he suffered prejudice as a result of Petersen's conduct. Accordingly, we reject his request to return this case to a presentence status.

### II.   *Manifest Injustice*

¶29    After sentencing, a defendant may obtain plea withdrawal upon showing that it is necessary to correct a manifest injustice. *State v. Cain*, 2012 WI 68, ¶¶24-25, 342 Wis. 2d 1, 816 N.W.2d 177. This showing, in turn, requires the defendant to establish a "serious flaw in the fundamental integrity of the plea." *Id.*, ¶25 (citation omitted). A manifest injustice occurs, for example, when the defendant has received constitutionally ineffective representation related to the plea, the plea was involuntary, or the defendant did not personally ratify the plea. *Id.*, ¶26. Additionally, instances of affirmative misinformation about the law by the prosecutor and defense counsel can support plea withdrawal. *State v. Dillard*, 358 Wis. 2d 543, ¶39.

¶30    Hungerford contends the "undisputed evidence shows [he] did not understand he would be convicted and sentenced on four felonies when he entered his pleas." This claim does not square with his concession in his reply brief that his pleas were knowing, intelligent and voluntary. Hungerford raises no issue regarding the adequacy of the plea colloquy or the constitutional validity of his pleas at the time they were entered. Instead, he again focuses on his postplea

expressions of confusion, asserting that he "expressed his disagreement at the first opportunity."

¶31    Contrary to Hungerford's argument, the "first opportunity" to express disagreement with the nature of the plea agreement and the charges to which he would be pleading was, in fact, the plea hearing. Absent a challenge to the plea colloquy, to his attorney's effectiveness at the time of the plea hearing, or to the knowing, intelligent and voluntary nature of his pleas, we conclude Hungerford has not demonstrated a manifest injustice.

*By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.